481 P.2d 855

Mary S. LIVINGSTON, as surviving spouse of Leroy H. Livingston, Deceased, Appellant,

v.

CITIZEN'S UTILITY, INC., a Corporation, Appellee.

No. 10225–PR.

Supreme Court of Arizona, In Banc.

March 9, 1971.

Rees, Estes & Browning by Paul G. Rees, Jr., Tucson, for appellant.

Gaynor K. Stover, Tucson, for appellee.

HAYS, Vice Chief Justice.

This cause is before us on a petition for review of a decision of the Court of Appeals, Division Two, which affirmed a summary judgment granted by the Superior Court of Santa Cruz County. Livingston v. Citizen's Utility, Inc., 13 Ariz.App. 94, 474 P.2d 453 (filed September 11, 1970). The judgment of the trial court is reversed and the opinion of the Court of Appeals is vacated.

On August 14, 1965, Leroy H. Livingston suffered death by electrocution while working as a member of a four-man crew supplied by Dykes Electric Company to repair some damage to a high voltage line belonging to Citizen's Utility, Inc., defendant herein. Livingston's wife, plaintiff herein, applied for and was granted workmen's compensation which was awarded by the Industrial Commission by reason of Livingston's employment with Dykes. Thereafter, on February 10, 1966, plaintiff brought this wrongful death action against defendant on a theory of negligence. Plaintiff demanded a jury trial. On July 5, 1968, defendant moved for summary judgment on the grounds that it was immune from suit under A.R.S. § 23–906 because the deceased was its statutory employee under the provisions of A.R.S. § 23–902, subsec. B. Sec. 23–906 provides that employers who comply with certain other provisions of the Workmen's Compensation Act shall not be liable for damages at common law or by statute for the

injury or death of an employee unless such employee rejects the provisions of the Act. Sec. 23–902, subsec. B provides:

"When an employer procures work to be done for him by a contractor over whose work he retains supervision or control, and such work is a part or process in the trade or business of the employer, then such contractors and the persons employed by him, and his sub-contractor and persons employed by the sub-contractor, are, within the meaning of this section, employees of the original employer."

Certain facts were stipulated to by the parties for the purpose of the motion for summary judgment. These facts indicate that on Friday afternoon, August 13, 1965, a severe storm struck the vicinity of Nogales, Arizona, knocking down five poles and a high voltage line belonging to defendant. W. E. Powels, defendant's assistant manager, directed a four-man crew of Dykes Electric Company to go to the scene and assist in the repair of the damaged line. The Dykes crew was then engaged in line rebuilding in downtown Nogales. The record is silent on the question of whether these lines also belonged to defendant.

The Dykes crew included the deceased and a foreman. A truck belonging to defendant and some of defendant's employees were at the site by the time the Dykes crew arrived. Defendant's employees included a manager, an engineer, two apprentice lineman, a foreman and W. E. Powels, assistant manager. Dykes furnished its crew and certain motor and electrical equipment for a flat rate of $39.25 per hour. Defendant furnished all of the materials needed for the repairs and some of the equipment. It was further stipulated that the repair of high voltage lines was a part or process in the trade or business of defendant; that following the accident, W. E. Powels directed a temporary discontinuance of the work; that the deceased was carried on the payroll of Dykes and had not rejected the benefits of the Workmen's Compensation Act; that defendant had fully complied with the Act and that all employees of defendant, their dependents and survivors are entitled to benefits thereunder.

The trial court granted summary judgment in favor of defendant. Although the court did not state the grounds upon which its judgment was based, it must be deemed to have found that the deceased was the statutory employee of defendant and that defendant was immune from suit all by reason of the provisions of A.R.S. §§ 23–902, subsec. B and 23–906, supra. Those were the only issues presented to and extensively argued before the court.

■ In considering a motion for summary judgment, we must view the evidence in a light most favorable to the losing party and give such party the benefit of all favorable inferences that may be reasonably drawn therefrom. If the evidence thus viewed is such that reasonable men may reach different conclusions as to whether there is a genuine issue as to any material fact, the judgment must be reversed. Harbour v. Reliable Insurance Company, 94 Ariz. 344, 385 P.2d 220 (1963); Cummings v. Prater, 95 Ariz. 20, 386 P.2d 27 (1963). Summary judgment should not be granted if, upon examination of the entire record, it is determined that there is a disputed fact which, if true, could affect the final judgment. Sarti v. Udall, 91 Ariz. 24, 369 P.2d 92 (1962). Litigants are entitled to a trial where there is the slightest doubt as to the facts. Peterson v. Valley National Bank of Phoenix, 90 Ariz. 361, 368 P.2d 317 (1962). Further, although certain basic facts are undisputed, if factual inferences must be drawn therefrom in order to render judgment and reasonable minds could draw different inferences, summary judgment is not proper. S. J. Groves & Sons Company v. Ohio Turnpike Commission, 315 F.2d 235 (6th Cir. 1963); Winter Park Telephone Co. v. Southern Bell Telephone & Telegraph Co., 181 F.2d 341 (5th Cir. 1950).

■ In order to find that the deceased was the statutory employee of defendant

within the meaning of A.R.S. § 23–902, subsec. B, supra, it was necessary for the court to find that the repair work was a part or process in the trade or business of defendant *and that defendant retained supervision or control over the work being performed by the deceased.* Although the parties stipulated that the work was a part or process of defendant's trade or business, they did not stipulate that defendant retained supervision or control over the Dykes crew. In fact, this question was extensively argued before the court on the motion for summary judgment.

Plaintiff argued that Dykes was employed as an independent contractor contending that defendant had no right to fire the deceased because he was on Dykes' payroll; that although Dykes was paid by the hour, it is common for independent contractors to so charge in the circumstances rather than charge a fixed amount; that Dykes furnished most of the equipment and that the services supplied by Dykes were of an independent calling and required special skills. On the other hand, defendant argued that Dykes was its employee contending that Dykes was employed by an oral contract; that the work was under the supervision of its employees who were at the site; that it furnished part of the equipment and tools; that it furnished all of the materials and that it did not pay Dykes on the basis of a result to be reached but on the basis of the number of hours its crew worked.

It is obvious that the parties were far from agreement with respect to the proper inferences to be drawn from the facts, some of which were not stipulated, in order to establish the contractual relationship that existed between defendant and Dykes. Where there is shown no express agreement as to the right of the employer to control the manner of doing the work by an alleged employee, the existence or non-existence of this right must be determined by reasonable inferences drawn from the surrounding circumstances and this is nor-mally a question of fact for the jury. Only when there is but one reasonable inference to be drawn from the evidence does the question become one of law for the court. Burlingham v. Gray, 22 Cal.2d 87, 137 P.2d 9 (1943).

The record before the trial court was practically, if not totally, devoid of any evidence bearing directly upon the question of whether or not defendant retained any control or supervision over the Dykes crew. The deposition of a member of the Dykes crew was taken by defendant but it is not before us because it was not designated as part of the record on appeal. Defendant included a portion of this deposition in its brief but the quoted portion fails to shed any appreciable light on the question. No other depositions were taken although several persons were present at the time of the tragedy whose testimony could very well have served to establish the understanding between Dykes and defendant with respect to supervision or control or the absence thereof. One of these persons was W. E. Powels, defendant's assistant manager, who hired the Dykes crew for the job on which the deceased met his death. A trial of this case could produce evidence from which the contractual relationship between Dykes and defendant could be established to a far greater certainty than is possible from the record thus far developed.

The question of supervision or control was a hotly disputed issue the resolution of which was necessary in order to grant a judgment for either party. To resolve this question, the trial judge must have drawn certain inferences from the stipulated facts. He may well have drawn inferences from some of the facts argued but which were not stipulated. We are of the opinion that the record before the trial court was insufficient to justify a finding of supervision or control or the lack of it as a matter of law. It was error to grant summary judgment for defendant.

The judgment of the trial court is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

STRUCKMEYER, C. J., and UDALL, LOCKWOOD and CAMERON, JJ., concur.