RICHARD HAROLD THORNTON, JR.

*v.*

CHARLESTON AREA MEDICAL CENTER, *etc., et al.*

(No. 13484)

Decided February 18, 1975.

*Guy R. Bucci* for appellant.

*W. T. O'Farrell* for Charleston Area Med. Center.

HADEN, CHIEF JUSTICE:

This is an appeal from a final order of the Circuit Court of Kanawha County, West Virginia, affirming as plainly right the final judgment of the Common Pleas Court of that county, sustaining the motion of Charleston Area Medical Center, Inc. and Harold B. Sunday, M.D. and Jack Pushkin, M.D. for summary judgment.

In rendering judgment, the trial court ruled as a matter of law that an injured person's unqualified release of an original tort-feasor from liability for personal injuries made after receiving medical care for such injuries, prevents a further recovery by the injured person from treating physicians and hospitals providing such care as alleged successive and independent tort-feasors for alleged negligent treatment causing additional damage.

Since 1933, the foregoing principle has been the law of this jurisdiction and has been applied to prevent a second successful civil action and further recovery against alleged successive and independent tort-feasors who may have aggravated a plaintiff's original injuries by reason of negligent treatment of those injuries. *Mier v. Yoho*, 114 W. Va. 248, 171 S.E. 535 (1933); *Conley v. Hill*, 115 W. Va. 175, 174 S.E. 883 (1934); *Accord, Makarenko v. Scott*, 132 W. Va. 430, 55 S.E.2d 88 (1949).

We granted this appeal to re-examine the validity of the so-called "Mier rule." The basic facts of this case are indistinguishable from those previously presented to this Court in the *Mier v. Yoho* and *Conley v. Hill* cases, *supra*. The sole issue presented is: Should the law presume that when an injured person effects a recovery from an original tort-feasor for personal injuries after receiving allegedly negligent medical care for such injuries which aggravated the original injuries, he thereby intended to accept such recovery as total satisfaction for the original and succeeding tortious injuries inflicted by

both the original tort-feasor and those who rendered negligent medical care?

In this case, Richard Harold Thornton, Jr. suffered personal injuries occasioned by the negligence of Juanita and Harold D. Cogar in the operation of their automobile which collided with a motorcycle driven by Thornton on June 24, 1969. Thornton's injuries, including a broken leg, required immediate hospitalization and treatment which was rendered between June 24, 1969 and August 12, 1969. The Charleston General Hospital, a predecessor corporation to Charleston Area Medical Center, Inc., provided hospitalization to Thornton, where he received treatment from Doctors Sunday and Pushkin.

On April 16, 1970, and while Thornton was an infant, his guardian petitioned the Common Pleas Court of Kanawha County, by way of summary proceeding provided for in West Virginia Code, Chapter 44, Article 10, Section 14, to approve a settlement of his personal injury claim against the original tort-feasors. The final order in that proceeding reflected approval of a settlement in the amount of $10,000.00 and "ADJUDGED and ORDERED that said Juanita Cogar and Harold D. Cogar be, and they are hereby, forever discharged and acquitted of any and all claims of said infant on account of said accident." The judgment order also acknowledged that certain medical expenses had been incurred in the treatment of Thornton for the personal injuries, and directed his guardian to pay from the settlement figure as follows: "The Charleston General Hospital $1,202.50 [and] Miyakawa, Sunday & Pushkin, M.D.s $900.00".

After reaching his majority, Thornton instituted the instant civil action against the appellees herein, alleging that the original personal injuries suffered by him at the hands of the Cogars had been aggravated by the alleged negligent treatment of his physicians and the hospital, resulting in pain and suffering, permanent injuries and total damage in the amount of $500,000.00. At the close of the pleadings, the defendants moved for

summary judgment, which was granted on the basis of the *Mier* rule. The appeal followed.

The appellant contends that the trial court erred in failing to determine whether there was genuine issue of material fact concerning plaintiff's intention "not to release the respondents when releasing the original tort-feasors" and in determining that the negotiated settlement with the original tort-feasors precluded a second recovery from the hospital and physicians "who were successive, independent tort-feasors in the negligent and unskillful treatment of the petitioner's original injuries."

Any discussion of the problem posed in this case should begin with a recognition of three principles which have been accorded unquestioned and consistent application in the tort law of this State. First, at common law, an injured party may have only one full recovery, and complete satisfaction from any tort-feasor is satisfaction of the total damages suffered. *New River & Pocahontas Consolidated Coal Company v. Eary*, 115 W. Va. 46, 174 S.E. 573 (1934). Second, if an injured person uses ordinary care in selecting a physician, then the law regards an injury resulting from mistakes of the physician or his want of skill as a part of the immediate and direct damages which naturally flow from the original injury. *Mier v. Yoho, supra; Conley v. Hill, supra; Makarenko v. Scott, supra.* Third, as the law regards the negligence of the one who caused the original injury as the proximate cause of aggravated injuries occurring by reason of the negligence of the physician, the original tort-feasor is liable for all damages, which include the successive damages inflicted by the physician. The latter two rules apply with equal force to damages caused by the negligence of hospitals rendering medical care. *See Comment,* 69 W. Va. L. Rev. 374 (1967); Annot., 39 A.L.R.3d 260 (1971); 22 Am.Jur.2d *Damages* §§ 112, 113 (1965). This Court reaffirms the continuing validity of the foregoing propositions of law. Nothing in the discussion and rulings which follow should be construed to abrogate these principles in any degree.

Commencing with the above principles, this Court in *Mier v. Yoho, supra,* took a quantum leap and held:

"An injured person's unqualified release of tort-feasor from liability for personal injuries, which release was made after receiving treatment of a physician for such injuries, prevents recovery by injured person of the physician for alleged negligent treatment." *Id., syllabus point* 2., 114 W. Va. 248.

The following year, the Court considered whether a dismissal with prejudice of an action against the original tort-feasor had like effect to a release and reaffirmed the *Mier* ruling in *Conley v. Hill, supra,* holding:

"Where a person has been injured by the wrongful act of another, a dismissal with prejudice of his action against the tortfeasor bars any subsequent claim against a physician called to treat the injury for acts of malpractice occurring prior to the institution of the action." *Id., syllabus point* 3., 115 W. Va. 175.

At this juncture, we believe it relevant to note that an entirely different set of rules governs civil actions instituted by an injured party who seeks further recovery from a *joint* tort-feasor because he is unsatisfied with the amount previously recovered against another joint tort-feasor. *Code* 1931, 55-7-12 provides:

"A release to, or an accord and satisfaction with, one or more joint trespassers, or tort-feasors, shall not inure to the benefit of another such trespasser, or tort-feasor, and shall be no bar to an action or suit against such other joint trespasser, or tort-feasor, for the same cause of action to which the release or accord and satisfaction relates."

By virtue of this statute, the presumption favors the injured party. A release, dismissal, etc. is "no bar" to a second action against other joint tort-feasors whose tortious acts or omissions concurred to damage the injured party. *Griffie v. McClung,* 5 W. Va. 131 (1872). Nothing

short of a full and complete satisfaction can make a first judgment a bar to a second action. *Brewer v. Appalachian Constructors, Inc.*, 135 W. Va. 739, 65 S.E.2d 87 (1951). Interestingly enough, the statute is merely expositive of the common-law rule and makes no change in the respective inchoate liability of joint tort-feasors to the injured party. *Danchatz v. Page Coal & Coke Company*, 110 W. Va. 212, 157 S.E. 404 (1931); *Bloss v. Plymale*, 3 W. Va. 393 (1869), *see*, Syllabus Points 3 and 4. As an illustration of a recent application of the joint tort-feasor release statute and its authority for the plaintiff to pursue a second action, *see*, *Tennant v. Craig*, W. Va., 195 S.E.2d 727 (1973).

The foregoing discussion is not parenthetical to the case at hand because, in *Mier v. Yoho*, the Court explicitly compared and distinguished successive and independent tort-feasors from joint tort-feasors. Part of the *ratio decidendi* of *Mier* involved an explicit rejection of Code 1931, 55-7-12 as being applicable to authorize a second action against the allegedly negligent physician. Unfortunately, in rejecting the statute's applicability, the Court may have ignored the common law which allowed for partial satisfaction against one tort-feasor without prejudicing plaintiff's right to thereafter sue a second for full satisfaction. Be that as it may, the *Mier* rule later gained additional credence in West Virginia law.

Sixteen years after the *Mier* decision, in *Makarenko v. Scott, supra,* the Court extended the application of the *Mier* rule and applied it to foreclose litigation in which the injured party sought to obtain a common-law recovery in tort from an alleged malpracticing physician who had rendered medical treatment incident to an employment-related injury received by a plaintiff who was covered by the Workmen's Compensation Fund. There, the Court held the previous receipt by the injured party of an award from the Workmen's Compensation Fund for the original injury operated as a release of successive injuries flowing therefrom and barred a civil action seeking recovery for damages attendant to a negligent

malpractice against the injured party's physician. Judge Kenna, joined by Judge Lovins, forcefully and logically dissented to the holding of the majority opinion.

In 1973, this Court, as presently constituted, overruled *Makarenko* insofar as it barred further action against a physician and hospital for maltreatment after the injured party had received a compensation award for the original injury in a workmen's compensation case. *Jones v. Laird Foundation, Inc.,* W. Va., 195 S.E.2d 821 (1973). Although the *Jones* decision held that the *Mier v. Yoho* principle had no application to a statutory award made to an injured workman, it did not purport to overrule the holdings of the *Mier* and *Conley* cases because such question was not presented for decision. *See,* concurring opinion by Sprouse, J., 195 S.E.2d 821, 826.

More recently, however, this Court in *Cox v. Turner,* W. Va., 207 S.E.2d 152 (1974), in reviewing a judgment obtained against an attorney for legal malpractice, reached a result which indicated our dissatisfaction with the *Mier* rule. Although that case failed to distinguish principles of law concerning joint tort-feasors and misapplied such principles to a fact situation involving successive and independent tort-feasors, it concluded contrary to the presumption of *Mier v. Yoho, supra.* The *Cox* case held that an injured party could recover a judgment against an attorney who negligently failed to institute a seasonable cause of action against an alleged malpracticing physician who had aggravated, by unskillful treatment, the injuries suffered by the plaintiff at the hands of an original tort-feasor, even though plaintiff had effected a recovery from one insurance carrier standing in the place of the original tort-feasor (an uninsured motorist), after the malpractice claim was known to plaintiff. Although we believe the resolution of that case to have been proper in its ultimate conclusion, it is unsatisfactory in the context of the litigation *sub judice* because it implicitly overruled the *Mier v. Yoho* and *Conley v. Hill* decisions, but ignored their applicability to the case. Therefore, in our present consideration of

whether to overrule the *Mier* and *Conley* cases, we acknowledge their current viability.

At the date of this opinion the numerical alignment of jurisdictions in the United States which have passed upon the question is in doubt, but several remain in accord with the *Mier* and *Conley* decisions. The rule as reconstructed by the writer from an annotation found at 39 A.L.R.3d 260 (1971), is characterized as the "traditional" resolution and is summarized as follows:

> A general release executed in favor of the one responsible for a plaintiff's original injury, in the absence of a different intention positively revealed by the language or circumstances of the release, precludes an ordinary negligence action against a physician or hospital for damages incurred by their negligent treatment or medical care of the original injury.

In this composite form the rule is substantially followed in the following jurisdictions: *Poltera v. Garlington,* 489 P.2d 334 (Colo.App. 1971); *Feinstone v. Allison Hospital, Inc.,* 106 Fla. 302, 143 So. 251 (1932); *Tidwell v. Smith,* 27 Ill.App.2d 63, 169 N.E.2d 157 (1960); *Staehlin v. Hochdoerfer,* 235 S.W. 1060 (Mo. 1921); *Mainfort v. Giannestras,* 49 Ohio Ops. 440, 111 N.E.2d 692 (C.P. 1951); *Farrar v. Wolfe,* 357 P.2d 1005 (Okla. 1960); *Williams v. Dale,* 139 Or. 105, 8 P.2d 578 (1932); *Thompson v. Fox,* 326 Pa. 209, 192 A. 107, 112 A.L.R. 550 (1937); and *Corbett v. Clarke,* 187 Va. 222, 46 S.E.2d 327 (1948).

On the other hand, the result reached by this Court in the recent *Cox v. Turner* case is very similar to that which is indicated if we should choose to follow the so-called "modern" rule that a release of the original tort-feasor may not *necessarily* bar a further recovery against a successive and independent tort-feasor who negligently or unskillfully renders hospital or medical care in the treatment of the injury caused by the original tort-feasor. Presently, some fourteen jurisdictions

have adopted a modification of the traditional rule which provides that:

> A release by an injured party of the tort-feasor responsible for the original injury does not *per se*, in the absence of language indicative of such an intention on the part of the parties, preclude a second action by the injured party against a physician or hospital for negligent treatment or medical care of the original injury, if there has been less than full compensation recovered for the injured party's total injuries.

In substance, this rule has been adopted in the following jurisdictions: *Cimino v. Alway*, 18 Ariz.App. 271, 501 P.2d 447 (1972); *Ash v. Mortensen*, 24 Cal.2d 654, 150 P.2d 876 (1944); *Knight v. Lowery*, 228 Ga. 452, 185 S.E.2d 915 (1971); *Smith v. Conn*, 163 N.W.2d 407, 39 A.L.R.3d 251 (Iowa 1968); *Fieser v. St. Francis Hospital and School of Nursing, Inc.*, 212 Kan. 35, 510 P.2d 145 (1973); *Selby v. Kuhns*, 345 Mass. 600, 188 N.E.2d 861 (1963); *Couillard v. Charles T. Miller Hospital, Inc.*, 253 Minn. 418, 92 N.W.2d 96 (1958); *Hansen v. Collett*, 79 Nev. 159, 380 P.2d 301 (1963); *Wheat v. Carter*, 79 N.H. 150, 106 A. 602 (1919); *Daily v. Somberg*, 28 N.J. 372, 146 A.2d 676, 69 A.L.R.2d 1024 (1958); *Derby v. Prewitt*, 12 N.Y.2d 100, 236 N.Y.S.2d 953, 187 N.E.2d 556 (1962); *Galloway v. Lawrence*, 263 N.C. 433, 139 S.E.2d 761 (1965); *McMillen v. Klingensmith*, 467 S.W.2d 193 (Tex. 1971); *DeNike v. Mowery*, 69 Wash.2d 357, 418 P.2d 1010 (1966).

In jurisdictions following the modern rule, execution of the release in favor of the original tort-feasor does not furnish an irrebuttable presumption that the injured party also contemplated that he had recovered a complete satisfaction for his injuries, including those suffered at the hands of a negligent physician or hospital treating his original injuries. To the contrary, in the "modern" rule jurisdictions, parol evidence is admissible to explain the intention of the parties at the time the release of the original tort-feasor was executed. *Dickow v. Cookinham*, 123 Cal.App.2d 81, 266 P.2d 63 (1954); *Knight v. Lowery, supra; Community School District v.*

*Gordon N. Peterson, Inc.,* 176 N.W.2d 169 (Iowa 1970); *Couillard v. Charles T. Miller Hospital, Inc., supra; Krenz v. Medical Protective Company, etc.,* 204 N.W.2d 663 (Wis. 1973).

In our re-examination of the *Mier, Conley* and *Makarenko* cases, we are led to the conclusion that there is an aspect of inherent unfairness in the ineluctable application of an irrebuttable presumption which holds that a release of an original tort-feasor executed after treatment of injuries operates as an absolute bar to a second action by the injured party against a physician or hospital for negligent treatment or care of the original injury. Such a rule may operate unjustly for the benefit of negligent parties who have caused great injury to a person by unskillful medical treatment or negligent hospital care in that it absolutely frees them from liability or obligation to contribute to the recovery which the law has characterized as total. Such a rule does not provide for the contingency of latent and unpredictable manifestations of known injuries which may result in a greater and more permanent harm in the future, in a manner entirely unanticipated when the original tort-feasor was released. And, although the law would have it otherwise, the rule that the release constitutes an absolute bar may, in fact, prove to be a trap for the unwary layman who is ignorant of the law. To particularize, is it reasonable and fair to conclude that an injured party also excuses his physician or hospital from negligence when he releases a motorist who struck his motorcycle on the highway and injured him? The question answers itself. Legal fiction should serve justice, not strangle it.

Beyond question, an injured party has a separate cause of action against a successive and independent tort-feasor who negligently renders medical or hospital care in the treatment of injuries suffered at the hands of another. *See, Krenz v. Medical Protective Company, etc., supra; Ash v. Mortensen, supra.* Were it not for the fact that the injured party released the original tort-feasor, no bar could be asserted by the successive tort-feasor against the injured party on the premise that

such party received full satisfaction in his first recovery. We apprehend no sound legal reason for the law to presume that a successive tort-feasor should be the third party beneficiary of a contract of release or a dismissal in favor of the original tort-feasor. Accordingly, we deem it patently illogical to conclusively presume, in the absence of particular language indicative of such an intention, that a release of the original tort-feasor bars recovery from the subsequent tort-feasor.

For the foregoing reasons, the cases of *Mier v. Yoho*, 114 W. Va. 248, 171 S.E. 535 (1933); *Conley v. Hill*, 115 W. Va. 175, 174 S.E. 883 (1934); and *Makarenko v. Scott*, 132 W. Va. 430, 55 S.E.2d 88 (1949) are overruled insofar as those decisions adopted a conclusive presumption that an injured person's unqualified release of an original tort-feasor from liability for personal injuries, or the dismissal with prejudice of an action against such tort-feasor, made after receiving treatment for such injuries, bars recovery from successive tort-feasors by the injured person for acts of malpractice or negligent hospital treatment.

We hold that the execution of a general release in favor of the original tort-feasor or dismissal with prejudice of a civil action against such tort-feasor is *prima facie* evidence of the intention of the injured party to accept the same as full satisfaction of all damages which naturally flow from the original injury, in the absence of language or circumstances in the release or dismissal indicating a contrary intention of the parties; but whether such release or dismissal is a bar to further action for malpractice against the treating physician or hospital providing care is a question of fact to be answered from the intention of the parties. *See, Community School District v. Gordon N. Peterson, Inc., supra; Smith v. Conn, supra; Derby v. Prewitt, supra; Couillard v. Charles T. Miller Hospital, Inc., supra; Dickow v. Cookinham, supra.* Cf., *Bowie v. Sorrell*, 209 F.2d 49 (4th Cir. 1953); *Acker v. Martin*, 136 W. Va. 503, 68 S.E.2d 721 (1951); *Janney v. Virginian Railway Company*, 119 W. Va. 249, 193 S.E. 187 (1937). To determine the intention of

the parties with reference to release of successive tort-feasors, the injured party is entitled to introduce parol evidence to explain the terms of a contract of release in favor of, or the circumstances attendant to a dismissal with prejudice of a civil action against, the original tort-feasor.

The judgment of the Circuit Court of Kanawha County is reversed and the case is remanded to that court for further proceedings so that a determination may be made of whether there remains a genuine issue of material fact concerning plaintiff's intention not to release alleged successive and independent tort-feasors for malpractice when he released the original tort-feasors for damages naturally flowing from the automobile accident of June 24, 1969.

*Reversed and remanded*
*with directions.*